IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | |
| MERRELL HOBBS | : | No. 10-620-02 |

## M E M O R A N D U M

**STENGEL, J.**                                                                       **July 12, 2012**

Presently before the Court are a number of Defendant, Merrell Hobbs', Pretrial Motions. For the following reasons, Defendant's Motions will be denied.

### I.     Background

On September 22, 2010 and September 7, 2011, a federal grand jury returned a seventy-three count indictment and an eighty-nine count superseding indictment, respectively, charging Defendant, Merrell Hobbs, along with nineteen (19) other Defendants with various crimes occurring on or about October 2001 through approximately October 6, 2010. These criminal acts were committed in and around the Bartram Village Housing Development (BVHD) in Southwest Philadelphia by a criminal enterprise known to law enforcement as the "Harlem Boys." Throughout the course of the investigation, police and federal authorities obtained and executed numerous search and seizure warrants, which led to the recovery of drugs, drug paraphernalia, drug proceeds, firearms, ammunition, fired cartridge casings, documents, photographs, letters and other mail, and other items.

Members of the enterprise committed, attempted, and threatened to commit acts of violence, including murder, assault, and robbery, to protect and expand the enterprise's

criminal operations. The members of the enterprise had varying roles. The Government alleges that Defendant Hobbs was a supplier and distributor of illegal narcotics and a gunman for the enterprise, who committed acts of violence with other members of the enterprise, such as assaults and other crimes.

Hobbs is charged with ten (10) counts in the superseding indictment. These counts include charges of conspiracy to participate in a racketeering enterprise under 18 U.S.C. § 1962(d); conspiracy to distribute under 21 U.S.C. § 846; assault with a deadly weapon in aid of racketeering under 18 U.S.C. § 1959(a)(3); carrying and use of a firearm during a violent crime under 18 U.S.C. § 924(c); distribution of cocaine base ("crack") under 21 U.S.C. § 841(a)(1); and possession of a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c). Hobbs has filed a number pre-trial motions, which have been briefed by the parties and argued in a pre-trial motions hearing on May 15-16, 2012, where evidence and testimony were provided by the Government and counsel. These motions include motions for: discovery of 404(b) evidence (Doc. No. 171)[1], discovery of exculpatory evidence (Doc. No. 172)[2], discovery of confidential informants (Doc. No. 173), to suppress out of court identifications (Doc. No. 174[3] & 175), to strike surplusage from the indictment (Doc. No. 176), for bill of particulars (Doc.

---

[1] Defendant's motion for discovery of 404(b) evidence is denied for the reasons set forth in my July 12, 2012 Order.

[2] Defendant's motion for discovery of exculpatory evidence is denied for the reasons set forth in my July 12, 2012 Order.

[3] Defendant's motion to suppress out of court identification is denied for the reasons set forth in my July 12, 2012 Order.

No. 177)[4], for discovery of agent notes (Doc. No. 178)[5], to sever (Doc. No. 179), to suppress statement (Doc. No. 189), and to dismiss (Doc. No. 225).[6]

## II.     Motion to Discover Identity of Confidential Informants

Hobbs seeks the disclosure of the confidential informants utilized by the Government during its investigation into his criminal activities.  Effective law enforcement and the protection of the public interest require that the Government be permitted, absent exigent circumstances, to withhold the identity of informants.  See Rovario v. United States, 353 U.S. 53 (1957).  Mere speculation that disclosure would be helpful is not sufficient to override the Government's privilege.  United States v. Brenneman, 455 F.2d 809, 811 (3d Cir.), cert. denied, 408 U.S. 923 (1972).  Defendant Hobbs claims that the identities of the confidential informants "would allow defendant, the Court, and the jury to learn of the informant's motives for providing the information, and to learn precisely what information he provided."  He alleges that he needs this information to determine whether the CI was paid, or whether the CI has a prior criminal record.

Hobbs has not shown that the informer's identity "is critical to his case," Branzburg v. Hayes, 408 U.S. 665, 698 (1972).  Hobbs requests information, which may be helpful to impeach a witness, but there is no indication that any confidential

---

[4] Defendant's motion for a bill of particulars is denied for the reasons set forth in my July 12, 2012 Order.

[5] Defendant's motion for discovery of agent notes is granted.

[6] Defendant's motion to dismiss is denied for the reasons set forth in my July 12, 2012 Order.

informants will be called to testify.[7]  Further, even if Hobbs had articulated specific reasons that disclosure was critical and relevant to helping him prove his case, the Government's privilege to protect the identity of its confidential informants is very high, especially in a case with substantial counts involving violent conduct.  For these reasons, the Defendant's motion is denied.

### III. Motion to Suppress Out of Court Identification

On May 15, 2007, A.G., who testified at the pretrial motions hearing, was waiting for the trolley outside the entrance to BVHD, to go pick up his girlfriend from work.  At that time, he was approached by three males, who physically assaulted him, coming from behind and hitting him in the eye.  He was also kicked and punched, but managed to get up from the ground and run away.

On January 11, 2008, A.G. went to the Chinese take-out store across the street from BVHD. As he approached the store, he observed a group of approximately eight young men.  He testified he saw both Roane and Hobbs in the group, and heard one of them say, "There goes that old head, the one that we fucked up out there," referring to the May 15, 2007 incident wherein Hobbs, Roane and Parker assaulted him.  A.G. testified that he heard one of the Defendants say something like "we should get him again."  A.G. then heard one of the other men present say, "just wait."  A.G. testified that he went inside the Chinese store, placed his order and received his food, when he tried to leave

---

[7] If the Government chooses to utilize some of the confidential informants as witnesses in its Case-in-Chief, it shall disclose the identity of the confidential informant as well as any discoverable information to the defendants prior to trial.

Roane stated, "what the fuck old head," and hit A.G. across the face with a gun, causing him to bleed profusely and injuring his nose and face.

On April 23, 2008, while attending Roane's preliminary hearing for the assault that occurred on January 11, 2008, A.G. observed Merrell Hobbs inside the courtroom and recognized him as, the second male who, along with Omar Roane, assaulted him. A.G. reported this to the Assistant District Attorney in the courtroom as well as to police who were also present. Vincent Parker testified that A.G. identified the second assailant to him. Hobbs was subsequently arrested and charged with the January 11, 2008 assault on A.G.

The standard for admitting evidence of both in-court and out-of-court identifications is "that of fairness as required by the Due Process Clause of the Fourteenth Amendment." Manson v. Brathwaite, 432 U.S. 98, 113 (1977). If the identification can be shown to be reliable under the totality of the circumstances, then there is no due process violation even in the case of an unnecessarily suggestive procedure. United States v. Emanuele, 51 F.3d 1123, 1128 (3d Cir. 1995). Hobbs argues that this identification is unduly suggestive because the complaining witness was in court to testify at a preliminary hearing against an assailant the witness identified shortly after the incident while not referring to any other participants in the assault. Additionally, the identification came four months later.

This identification was not unduly suggestive. Detective Parker testified that there was no identification procedure employed by law enforcement which led to A.G.'s identification of Hobbs. Instead, it was the result of a random encounter; there is no

evidence to suggest that the Government in any way arranged for the encounter between A.G. and Hobbs to occur. Hobbs simply chose to attend Roane's preliminary hearing as a spectator. Under the totality of the circumstances, the identification was reliable and the Defendant's motion to suppress is denied.

**IV.     Motion to Strike Surplusage from the Indictment**

Motions to strike surplusage are rarely granted, but the Third Circuit has held that it is appropriate to strike surplusage when it is both irrelevant and prejudicial. United States v. Hedgepeth, 434 F.3d 609, 612 (3d Cir. 2006). Merrell Hobbs seeks to strike language contained in the superseding indictment referring to the term "gunman," "pistol-whipped," "leader," and strike all references to his alias/nickname, "Murder," used throughout the indictment. Defendant argues that these are not essential to the charges, and are unnecessary or inflammatory.

The terms "gunman," "pistol-whipped," and "leader" are relevant as they accurately describe the roles of the Defendant and the acts that he committed in furtherance of the enterprise's criminal activity. The Government intends to show through evidence what role each defendant played in these conspiracies, and in some instances, it includes the role of "leader," or "gunman." Therefore, I will deny the motion as it pertains to the terms "gunman," "pistol-whipped," and "leader."

The Third Circuit has held that "[t]he inclusion of an alias in the indictment, even one with strong negative connotations, is permissible if it is needed to connect the accused to the acts charged." United States v. Vastola, 899 F.2d 211, 232 (3d Cir.), rev'd

on other grounds, 497 U.S. 1001 (1990).[8]  The Government's argues that it will show that the Defendant Hobbs is known to some of the cooperating co-defendant witnesses by his street name, "Murder."  Therefore, reference to this alias is necessary for these witnesses to identify the defendant.  The Government further argues that if they fail to connect the alias "Murder" to the defendant, the Court can remedy any alleged prejudice by striking the testimony and instructing the jury to not consider the evidence.  Because the Government represented that reference to the alias is necessary for its witnesses to identify the defendant, it is necessary to determine if the witness can identify the Defendant by any other name.  Therefore, I will deny the motion with regard to "Murder" without prejudice to be raised again at trial.

## V.     Motion to Sever

Rule 8(b) provides that two or more defendants may be charged in the same indictment "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses."  FED. R. CRIM. P. 8(b); United States v. Eufrasio, 935 F.2d 553, 570 n.20 (3d Cir. 1991).  Rule 8(b) provides substantial leeway to prosecutors who wish to join defendants charged with participating in the same conspiracy or racketeering enterprise in a single trial.  See id. at 567.  This circuit's general rule is that defendants indicted together should be tried

---

[8] Other circuits have also applied this rule. See United States v. Clark, 541 F.2d 1016 (4th Cir.1976), and United States v. Skolek, 474 F.2d 582 (10th Cir.1973). See also United States v. Lowe, 25 F.3d 1059 (1994 WL 237502) (10th Cir.1994). In Clark, the Fourth Circuit stated that a pretrial motion to strike an alias mentioned in the indictment should not be granted if the Government intends to introduce evidence that a defendant used a particular alias in the commission of the crime charged. Id. at 1018. In Skolek, the Tenth Circuit held that use of an alias in an indictment which was taken into the jury room was permissible where there was testimony that a defendant had used the alias. Id. at 586.

together when substantial evidence and comparable levels of culpability appear in the cases to be joined.[9]  See United States v. Eufrasio, 935 F.2d 553, 568 (3rd Cir. 1991).

Rule 14 of the Federal Rules of Criminal Procedure provides, in relevant part, "if the joinder of offenses or defendants in an indictment … appears to prejudice a defendant or the Government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a).  In interpreting this rule, the Supreme Court has stated:

> When defendants properly have been joined under Rule 8(b), a district court should grant severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.  Such a risk might occur when evidence that the jury should not consider against a defendant and would not be admissible if a defendant were tried alone is admitted against a codefendant.  … When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but … less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.

United States v. Zafiro, 506 U.S. 534, 539 (1993).  See also United States v. Inigo, 925 F.2d 641, 655 (3d Cir. 1991)(finding that a trial court must carefully consider whether the charges and evidence that will be presented is such that a jury could not be expected to "compartmentalize" it for the purpose of determining guilt or innocence).

The defendant carries the heavy burden to prove that the denial of severance would lead to clear and substantial prejudice resulting in a manifestly unfair trial.  United States v. Lore, 430 F.3d 190, 205 (3d Cir. 2005).  Merrell Hobbs seeks to sever his trial

---

[9] The presumption in favor of joint trials operates most strongly in conspiracy cases, United States v. Sandini, 888 F.2d 300, 307 (3d Cir. 1989), because the Government's proof in such cases necessarily relies on showing a connection between conspirators, which often may be achieved most effectively through a joint trial.  United States v. Jackson, 649 F.2d 967, 973 (3d Cir. 1990).

from the other defendants' because there is "no curative or limiting instruction can provide the necessary due process protections required." Hobbs contends that his trial should be severed because of the impermissible risk of prejudicial spillover of evidence that may be admissible against other properly joined defendants but not them, and the confusion that this will cause in the juror's minds.

Hobbs has not overcome the "heavy burden in gaining severance." United States v. Quintero, 38 F.3d 1317, 1343 (3d Cir. 1994). Here, the danger of spillover evidence in not a great concern because the Government asserts that all of the evidence to be presented against Mr. Hobbs co-conspirators would also be admissible against him if he were tried separately, since the acts of all co-defendants are also alleged "overt acts" with respect to the RICO conspiracy. Therefore, the vast majority of the evidence would be relevant and competent as against each defendant and the evidence could not be prejudicial.[10] Zafiro v. United States, 506 U.S. 534, 539 (1993).

According to the indictment, Hobbs was a long term member of the drug conspiracy. He is charged in ten counts in the indictment. Even assuming that the majority of evidence relates to defendants other than Hobbs, a disparity in the amount of evidence is not enough to sever the trial. Eufrasio, 935 F.2d at 568. Further, Hobbs does not cite any specific evidence relating to his co-defendants which the jury will be unable to set aside. United States v. Sandini, 888 F.2d 300, 307-08 (3d Cir. 1989).

---

[10] For example, in a RICO case like this one, all evidence tending to prove the existence of the enterprise – specifically, the evidence of the enterprise's racketeering acts – would be admissible against all RICO and VICAR co-defendants in separate trials.

The public's interest in judicial economy favors a joint trial and outweighs the risk of prejudice to the defendant. Many witnesses would have to testify more than once, which is an undue burden, especially in a violent case like this. Additionally, I am confident that the jury will be competent to compartmentalize the evidence. Limiting instructions sufficiently alleviate any prejudice caused by a joint trial. See United States v. Console, 13 F.3d 641, 655-56 (3d Cir. 1993) (stating that limiting instructions can help the jury "compartmentalize" the evidence as it pertains to each defendant).

### VI. Motion to Suppress Statement

Hobbs requests that any statements made during the custodial interrogation on November 29, 2006 be suppressed because, he alleges, he was never Mirandized prior to questioning. The Government contends that Mr. Hobbs was, in fact, Mirandized. At the hearing, the Detective Joseph Marano testified that Hobbs was read his rights, acknowledged them, and agreed to answer questions without his attorney present. This testimony is reinforced by the report articulating the same. See Government's Exhibit 3. Additionally, Hobbs signed a form waiving his rights; however, the form is no longer available due to the custom of destroying records. Even without the signed form, I find the Detective's testimony to be credible and any statements by Mr. Hobbs were given intelligently and voluntarily, and Mr. Hobbs was fully aware and advised of his rights for purposes of the suppression hearing. See United States v. Ezell, 2004 U.S. Dist. LEXIS 17728, *21 (E.D. Pa. Aug. 31, 2004) (finding that based upon the assessment of the credibility of the detective witnesses, the defendant did not make any inculpatory statements prior to receiving Miranda warnings). Further, Mr. Hobbs did not testify to

the contrary and merely asserts that he was not <u>Mirandized</u> in his motion.  Therefore, the statements made by the Defendant will not be suppressed.

### **VII.   Conclusion**

For the reasons stated above, I will deny the Defendant's Motion for Discovery of Confidential Informants (Doc. No. 173), Motion to Sever (Doc. No. 179), and Motion to Suppress Statement (Doc. No. 189).

An appropriate Order follows.